UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JEREMY V. PINSON, | Case No. 17-CV-3790 (PJS/FLN) |
| Petitioner, | |
| v. | ORDER |
| WARDEN, FMC ROCHESTER, | |
| Respondent. | |

Jeremy V. Pinson, pro se.

Erin M. Secord, UNITED STATES ATTORNEY'S OFFICE, for respondent.

Jeremy Pinson is a federal prisoner who lost 109 days of good-time credit after engaging in acts of self-mutilation and striking a guard. Pinson filed this habeas action under 28 U.S.C. § 2241 to challenge her[1] loss of good-time credit. Magistrate Judge Franklin L. Noel issued a Report and Recommendation ("R&R"), recommending that the Court deny Pinson's petition. Pinson filed a timely objection to the R&R, and the government responded. The Court has conducted a de novo review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Based on that review, the Court sustains in part and overrules in part Pinson's objection.

---

[1]Pinson is biologically a male and is classified as a male by the Bureau of Prisons. But Pinson identifies as a female, and both Pinson and the government use female pronouns when referring to her. The Court will do likewise.

I. BACKGROUND

Jeremy Pinson is no stranger to either prison disciplinary proceedings or federal litigation. While in prison, Pinson has been the subject of 82 disciplinary proceedings. ECF No. 12-5; ECF No. 12, ¶ 9. Pinson has also filed dozens of federal lawsuits, many of which challenged the outcome of disciplinary proceedings.

On October 2, 2016, while incarcerated at the United States Penitentiary in Terre Haute, Indiana, Pinson engaged in acts of self-mutilation and struck a prison guard in the head with handcuffs. ECF No. 1-1 at 2-4. Pinson was then transferred to the United States Medical Center for Federal Prisoners in Springfield, Missouri ("MCFP Springfield"). Prior to commencing disciplinary proceedings against Pinson in connection with the October 2 incident, staff at MCFP Springfield asked that a competency and responsibility evaluation of Pinson be conducted.[2] ECF No. 7; ECF No. 12-2 at 5-6; ECF No. 12, ¶ 17.

Pinson was evaluated by Dr. Randy Brandt, Chief of Psychology at MCFP Springfield. ECF No. 7; ECF No. 6, ¶¶ 1, 7. Dr. Brandt's report refers to a previous evaluation of Pinson that he performed—an evaluation that was ordered after Pinson was involved in a different incident at a local hospital on October 3, 2016. ECF No. 7;

---

[2]Pinson suffers from significant mental illness. In fact, Pinson was found incompetent (and thus not responsible for her conduct) in 6 of the 82 disciplinary proceedings to which she was subjected. ECF No. 12-5; ECF No. 12 at ¶ 9.

ECF No. 14 at 3-5; ECF No. 12, ¶ 28. These two reports indicate that Dr. Brandt took into account Pinson's history and all of the circumstances of the two incidents—including Pinson's alleged use of K2 and PCP on October 2, 2016, and Pinson's alleged schizoaffective disorder—and concluded that Pinson was competent and responsible. ECF No. 7; ECF No. 14 at 3-5.

Based on Dr. Brandt's report, MCFP Springfield decided to go forward with disciplinary proceedings against Pinson. Dr. Brandt's report was provided to Kevin Nikes, the hearing officer assigned to Pinson's case. ECF No. 1-1 at 5; ECF No. 12, ¶¶ 25-26. Pinson also submitted her own medical records to Nikes in an effort to establish that she was incompetent and thus not responsible for her conduct. *See* ECF No. 16. Pinson's documents included a December 2016 "clinical encounter" form indicating that a psychiatrist (Dr. Shawn Rice) had prescribed Pinson medication "for agitation" after she requested it. ECF No. 16 at 2-3. Further, in Pinson's statement at the disciplinary hearing—and in statements that she made to Dr. Brandt and the investigating lieutenant prior to the hearing—Pinson claimed that she was high on K2 and PCP at the time of the October 2, 2016 incident. ECF No. 1-1 at 2; ECF No. 13 at 2; ECF No. 14 at 4. Pinson never alleged (at or before the hearing) that her intoxication had been anything but voluntary. *See id.*

Following the hearing, Nikes found Pinson mentally competent and therefore responsible for her conduct on October 2, 2016. ECF No. 1-1 at 5. Nikes disciplined Pinson by revoking 109 days of good-time credit. *Id.* Pinson exhausted her administrative appeals and then filed a habeas petition challenging the loss of her good-time credit.[3] ECF No. 1. Judge Noel recommends that the Court deny Pinson's petition. ECF No. 30.

## II. DISCUSSION

Pinson raises three objections to Judge Noel's recommendation:

First, Pinson contends that Judge Noel should have addressed "with . . . substance" the issue of her mental competency. ECF No. 31 at 2. The Court disagrees. As explained by Judge Noel, ECF No. 30 at 6-7, a court cannot overturn a prison-disciplinary decision as long as that decision is supported by "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985). The "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence"; rather, the court need only ask "whether there is *any* evidence in the record that could support the conclusion." *Id.* at 455-56 (emphasis added). Nikes's finding that Pinson was competent and

---

[3]Subsequent to the disciplinary proceeding, Pinson was transferred to the Federal Medical Center in Rochester, Minnesota, making this Court a proper venue for Pinson's § 2241 petition. *See United States v. Chappel*, 208 F.3d 1069, 1069 (8th Cir. 2000).

responsible was unquestionably supported by "some evidence," as Nikes relied on Dr. Brandt's evaluation. *See* ECF No. 1-1 at 5; ECF No. 7. Further, Pinson's attempt to relitigate her PCP-intoxication defense is just another way of arguing that Nikes's competency decision was substantively wrong. ECF No. 31 at 2-3. Once again, Dr. Brandt's reports—which took into account Pinson's alleged use of K2 and PCP, but still found Pinson competent—provide "some evidence" for Nikes's competency finding. *See* ECF No. 7; ECF No. 14.[4]

---

[4]Pinson argues that Dr. Brandt should not have been allowed to express an opinion regarding the availability of a voluntary-intoxication defense, as that is "a legal not medical opinion." ECF No. 31 at 3. The Court need not address Pinson's objection, however, as Dr. Brandt's opinion was correct, and thus Pinson was not prejudiced by it.

All of the infractions that Pinson is alleged to have committed require only general intent. *See* ECF No. 12-3 at 8, 12 (containing the three offense provisions at issue, none of which contain specific intent language); *see also Bond v. Horne*, No. 2:11-CV-1342, 2015 WL 4878493, at *2 (W.D. Pa. Aug. 14, 2015) (finding that prison disciplinary offenses do not require proof of specific intent); *Townsend v. Warden, FCC Lewisburg*, No. 3: CV-12-0636, 2013 WL 371930, at *9 (M.D. Pa. Jan. 30, 2013) (same); *Armstrong v. Warden of USP Atwater*, No. 1:10-CV-173 DLB HC, 2011 WL 2553266, at *7 (E.D. Cal. June 24, 2011), *aff'd*, 468 F. App'x 786 (9th Cir. 2012) (same). Pinson never indicated that her PCP use was not voluntary. *See* ECF No. 1-1 at 2; ECF No. 13 at 2; ECF No. 14 at 4. Given that voluntary intoxication is not a defense to a general-intent offense, Dr. Brandt's "legal" opinion that Pinson could be held accountable notwithstanding her voluntary PCP intoxication was correct. *See United States v. Oakie*, 12 F. 3d 1436, 1442 (8th Cir. 1993) ("Voluntary intoxication is a defense to a crime requiring proof of specific intent, but not to a crime requiring only proof of general intent.") (citations omitted).

Pinson now seems to argue that she was *in*voluntarily intoxicated, but she did not make this claim before Nikes, and thus she cannot make this claim now. ECF No. 1-
(continued...)

Second, Pinson contends that Nikes was not qualified to decide if she was competent because he had "no medical or mental health training." ECF No. 31 at 3. But this argument was not raised before Judge Noel, and thus Pinson is precluded from raising it now. "A party cannot, in [her] objections to an R&R, raise arguments that were not clearly presented to the magistrate judge." *Hammann v. 1–800 Ideas.com, Inc.*, 455 F. Supp. 2d 942, 947-48 (D. Minn. 2006) (citing *Madol v. Dan Nelson Auto. Grp.*, 372 F.3d 997, 1000 (8th Cir. 2004)); *see also Ridenour v. Boehringer Ingelheim Pharm., Inc.*, 679 F.3d 1062, 1067 (8th Cir. 2012) ("The district court properly refused to consider Ridenour's argument that longer statute of limitations periods applied to his claims because this argument was not presented first to the magistrate judge."). Moreover, due process obviously does not require that competency decisions be made by those with medical or mental-health training. Federal and state judges make competency decisions every day, and few judges have medical or mental-health training.

Finally, Pinson contends that "multiple" disputes of material fact regarding the adequacy of the disciplinary procedures preclude dismissal of her habeas petition. ECF No. 31 at 1. Prisoners must, of course, be afforded due process before being "deprived of life, liberty, or property." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). This does not

---

[4](...continued)
1 at 2-5.

mean that a prisoner is entitled to "the full panoply of rights due a defendant" in a criminal trial. *Id.* But before a prisoner may be denied good-time credit, she must be provided at least the following: (1) notice of the charges against her at least 24 hours before any hearing; (2) the opportunity to call witnesses and submit evidence when doing so would not be "unduly hazardous to institutional safety or correctional goals"; (3) assistance with her case if the prisoner is illiterate or the case is complex; (4) an impartial decision-maker; and (5) a written statement identifying the evidence on which the hearing officer relied and explaining the basis of the hearing officer's decision. *Id.* at 564-72.

A district court cannot dismiss a habeas petition without first holding an evidentiary hearing if the evidence in the record creates a factual dispute that, if resolved in the petitioner's favor, would entitle the petitioner to relief. *Shelton v. Ciccone*, 578 F.2d 1241, 1245 (8th Cir. 1978). No such factual dispute exists when a petitioner's allegations are vague, conclusory, contradicted by evidence in the record, or inherently incredible. *Brown v. Lockhart*, 781 F.2d 654, 656 (8th Cir. 1986).

Pinson submitted a laundry list of alleged inadequacies in the procedures that she was afforded, as well as an affidavit making more specific allegations. *See* ECF

No. 1-1 at 8, 10-12. With one exception, all of the allegations that Pinson makes are vague or conclusory, and many are clearly contradicted by the record.[5]

The exception is Pinson's allegation that Nikes (the hearing officer) was not an impartial decision-maker. ECF No. 1-1 at 11, ¶ 15. Specifically, Pinson avers that Nikes told her that while he personally believed she was "clearly mentally ill," he "[couldn't] hold [her] not responsible on this one" because of pressure he was receiving from "people above [his] pay grade." *Id.* Pinson also avers that Nikes stated that, while he would accept any documentary evidence Pinson submitted, he would not actually consider that evidence in making his decision, as he had no choice but to find her

---

[5] For example:

Pinson alleges that she was not provided sufficient notice of the charges against her. ECF No. 1-1 at 8, ¶ 3. But the record shows that Pinson received a copy of the operative incident report on December 22, 2016—well before the January 31, 2017 hearing. ECF No. 13 at 2.

Pinson alleges that the incident report was false—in fact, fabricated to retaliate against her for her legal activities. ECF No. 1-1 at 8, ¶ 2. But the record shows that Pinson *admitted* the underlying conduct described in this supposedly false report. ECF No. 1-1 at 2.

Pinson alleges that she was not allowed to have a staff representative at her hearing. ECF No. 1-1 at 8, ¶ 11. But the record shows that Pinson did, in fact, have a staff representative present. ECF No. 1-1 at 2; ECF No. 1-1 at 11, ¶ 15.

Finally, Pinson alleges that a competency evaluation was not done. ECF No. 1-1 at 8, ¶ 12. But the record shows that Dr. Brandt conducted such an evaluation. ECF No. 7.

competent and responsible. *Id.* Finally, Pinson alleges that Nikes refused her request to call her psychiatrist (Dr. Rice) to testify,[6] but instead merely accepted the documents that she submitted regarding Dr. Rice's prescription for medicine "for agitation." *Id.*; ECF No. 16 at 2-3. If Pinson's allegations are true—and Nikes really was pressured from higher-ranking officials to ignore any evidence Pinson submitted and find her responsible for her October 2, 2016 conduct—then Pinson was unconstitutionally deprived of her right to an impartial decision-maker. *See Edwards v. Balisok*, 520 U.S. 641, 647 (1997) ("The due process requirements for a prison disciplinary hearing are in many respects less demanding than those for criminal prosecution, but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence.").

Nikes denies making the comments attributed to him by Pinson, denies being pressured by anybody, and swears that he was "completely impartial and open-minded." ECF No. 12, ¶¶ 29-37. But the Court cannot resolve the direct conflict between Pinson's testimony and Nikes's without an evidentiary hearing. *See Witthar v. United States*, 793 F.3d 920, 923-24 (8th Cir. 2015); *Koskela v. United States*, 235 F.3d 1148,

---

[6]The Court recognizes that Pinson signed a form on January 17, 2017 saying that she did not intend to call witnesses, ECF No. 12-7, but that does not establish that she did not change her mind prior to the hearing on January 31, 2017.

1149 (8th Cir. 2001). Only after seeing the witnesses testify can the Court assess their credibility. *See Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013).

The Court's conclusion is not changed by the fact that the hearing report identifies all of the documents submitted by Pinson as evidence and asserts that Nikes's decision was made "[a]fter careful consideration." ECF No. 1-1 at 3, 5. In essence, Pinson is alleging that Nikes told her that he was conducting a kangaroo court with the facade of legitimacy—that is, he was going to go through the motions of an impartial proceeding ("I have to accept . . . your documents"), when, in reality, he was being forced to find her competent and responsible ("I have to find you responsible for this one, see there's [a lot] of pressure on this one and legal says I cannot look beyond the findings of the psychologist on the [mental competency] issue"). Thus, the facially legitimate hearing report is consistent with both Pinson's testimony and Nikes's.

In sum, if the government wants to persist in its defense of Pinson's habeas petition (as opposed to voluntarily agreeing to provide her with another hearing before a different hearing officer or restoring her good-time credits), the Court will have to conduct an evidentiary hearing at which Pinson and Nikes will have to testify in person.[7]

---

[7]The Court believes that "the interests of justice" require the appointment of counsel to assist Pinson at the evidentiary hearing. *See* 18 U.S.C. § 3006A(a)(2)(B) (2010);
(continued...)

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, the Court OVERRULES IN PART and SUSTAINS IN PART petitioner's objection [ECF No. 31] and ADOPTS the R&R [ECF No. 30] to the extent that it is consistent with this order. Accordingly, IT IS HEREBY ORDERED THAT petitioner's request for an evidentiary hearing is GRANTED IN PART and DENIED IN PART as follows:

1. The request is GRANTED with respect to the issue of the impartiality of disciplinary hearing officer Kevin Nikes.

2. The request is DENIED in all other respects.

Dated: October 17, 2018          s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge

---

[7](...continued)
Rules Governing § 2254 cases in United States District Court, Rules 1(b), 8(c).